IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DAVID TODD COTTEN                                                    PLAINTIFF

V.                                              CAUSE NO. 3:17-CV-296-CWR-FKB

CIMLINE, INC.; PLYMOUTH                                          DEFENDANTS
INDUSTRIES, INC.

## ORDER

Before the Court is the defendants' motion for summary judgment. The matter is fully briefed and ready for review.

## I.      Factual and Procedural History

In February 2016, David Todd Cotten was hired as a salesman for Cimline, Inc., a manufacturer and distributor of road-patching equipment. His sales territory included the southeastern United States. He signed a contract agreeing that if he ever left Cimline, he would not compete with its business for one year in the entire lower 48 states.

Ten months later, Cotten was terminated. He was presented a separation agreement and given 21 days to consider it. Cotten then signed the separation agreement which, among other things, confirmed the non-compete, waived his rights to sue Cimline, and outlined approximately $20,000 in compensation he would receive as part of his separation. About $18,000 of that sum stemmed from commissions for his 2016 sales; the remainder was two weeks' salary.

Cotten began working for one of Cimline's competitors in early 2017. Cimline wrote letters to him—and to the competitor—objecting to the employment.

Aggrieved, Cotten sued Cimline and its parent company, Plymouth Industries, for declaratory and injunctive relief in the Chancery Court of Rankin County, Mississippi. He sought to invalidate the non-compete clause and work without interference.

In April 2017, the defendants removed the matter to this Court pursuant to diversity jurisdiction. This motion followed. In it, the defendants argue that Cotten waived his right to bring this suit by signing the December 2016 separation agreement. Cotten contends that the separation agreement and the non-compete clause in it are void.

## II.        Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

## III.        Discussion

### A.        Substantive Law

Ordinarily, because this case is proceeding in diversity, the applicable substantive law would be that of the forum state. *Capital City Ins. Co. v. Hurst*, 632 F.3d 898, 902 (5th Cir. 2011). But here, in the separation agreement, the parties agreed that any dispute would be

governed by Minnesota law.[1] *See Cypress Pharm., Inc. v. CRS Mgmt., Inc.*, 827 F. Supp. 2d 710, 721-22 (S.D. Miss. 2011).

In Minnesota, "[a] contract is formed when two or more parties exchange bargained-for promises, manifest mutual assent to the exchange, and support their promises with consideration." *Med. Staff of Avera Marshall Reg'l Med. Ctr. v. Avera Marshall*, 857 N.W.2d 695, 701 (Minn. 2014) (citation omitted).

> Consideration requires that a contractual promise be the product of a bargain. However, in this usage, 'bargain' does not mean an exchange of things of equivalent, or any, value. It means a negotiation resulting in the voluntary assumption of an obligation by one party upon condition of an act or forbearance by the other. Consideration thus insures that the promise enforced as a contract is not accidental, casual, or gratuitous, but has been uttered intentionally as the result of some deliberation, manifested by reciprocal bargaining or negotiation.

*Cederstrand v. Lutheran Bhd.*, 263 Minn. 520, 530-31 (1962) (citations omitted). "A promise to do something that one is already legally obligated to do provides no benefit and thus is a 'mere naked promise,' that does not constitute consideration." *Avera Marshall*, 857 N.W.2d at 701 (citations omitted).

## B. Analysis

Cimline has met its initial burden at summary judgment. It is undisputed that the separation agreement waives Cotten's right to bring legal claims arising out of his employment or separation, that Cotten received money for signing the separation agreement, and that he later filed suit against Cimline and Plymouth seeking to invalidate the non-compete.

Cotten's principal argument is that the separation agreement fails for lack of consideration. He reasons that about $18,000 of his severance pay stemmed from commissions

---

[1] Inexplicably, the parties have not briefed which state law should apply, but the undersigned does not think it would change the outcome of this case. *See Estate of Davis v. O'Neill*, 42 So. 3d 520, 527 (Miss. 2010); *Theobald v. Nosser*, 752 So. 2d 1036, 1040 (Miss. 1999).

he had already earned—which would not constitute consideration—and that the additional two weeks of post-separation wages came in exchange for him agreeing to be on-call during that time. Cimline responds with evidence that commissions were purely discretionary, *see* Docket No. 9-1 ("Commissions are paid . . . at the discretion of management [and] the company has the right to revise or revoke the compensation program . . . at any time."), and therefore were not already owed.

For simplicity's sake, the Court will assume that Cotten is right about his commissions. What follows will focus on the additional two weeks of wages.

The relevant section of the separation agreement provides the following:

> 2.    <u>Payments by Plymouth Industries, Inc.</u> As consideration for the commitments and releases in this Agreement, the Company will provide the following to Mr. Cotten:
>
> > a.  <u>Salary Continuation.</u> From and after <u>December 19, 2016</u> the Company will continue to pay Mr. Cotten his current bi-weekly salary of $1,596.15 less required deductions . . . through January 2, 2017[.] . . . In light of this salary continuation, Mr. Cotten agrees to respond to periodic questions as needed throughout the salary continuation period. . . .
> >
> > <u>Release and Waiver.</u> In consideration of the salary and benefit continuation contained herein, Mr. Cotten hereby releases, waives, and forever discharges Plymouth Industries, Inc. for all claims . . . arising in any way out of his employment or separation from his employment with Plymouth Industries, Inc.

Even assuming Cimline was already required to pay Cotten's earned commissions, the above language reveals that the parties made a new, additional bargain. Cotten would receive an additional two weeks of wages in exchange for responding to periodic questions *and* waiving his rights to sue. Cimline volunteered new money for Cotten's acts (periodic answers) and his forbearance (filing a lawsuit). That is the definition of consideration.

Cotten's response brief compares the adequacy of each element of the deal. To him, answering periodic questions was compensated by the additional wages, and the waiver was compensated by nothing at all. Under applicable law, however, the Court cannot subdivide the bargain on that granular a level—examining whether each separate act or forbearance has an equivalent counterpart. *See Cederstrand*, 263 Minn. at 530 ("'bargain' does not mean an exchange of things of equivalent, or any, value"). The question is instead whether "both [parties] voluntarily assumed an obligation on the condition of an act by the other party." *Avera Marshall*, 857 N.W.2d at 703 n.6. And the undisputed evidence indicates that both parties did so here.

Cotten presents one final argument. He concedes that by signing the separation agreement he waived his claims against Plymouth (the parent company), but presses that he did not waive his claims against Cimline (the subsidiary).[2]

It is true that the named parties to the agreement were Cotten and Plymouth. Section 10 of the agreement, however, extended the terms to "all subsidiaries and affiliated entities of the Company . . . ." Cimline is a subsidiary of Plymouth. It follows that Cotten waived his rights to sue both entities.

## IV.    Conclusion

The defendants' motion for summary judgment is granted. A separate Final Judgment shall issue this day.

**SO ORDERED**, this the 16th day of June, 2017.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[2] Cotten acknowledges that he released his claims against Plymouth, so it is not clear why he sued it in state court.